Case number 20-1262 et al. Entergy Arkansas, LLC et al. Petitioners versus Federal Energy Regulatory Commission. Ms. Amarkale for the petitioners, Ms. Banta for the respondents. Good morning, counsel. You may proceed. Thank you, your honor. I may have pleased the court. I'm Jennifer Amarkale for Petitioners Entergy Operating Companies and for the subsidiaries of Accel Energy, Inc., which are Northern States Power Wisconsin and Northern States Power Minnesota. I'd like to reserve two minutes for rebuttal, please. The cost causation principle requires that costs roughly match benefits, but exacting precision is not required. When you are dealing with transmission cost allocation, there are frequently imperfections, and that is the case here. But here FERC required precision and perfection in rejecting our interregional transmission cost allocation proposal. FERC denies that, and it seems to me its orders don't support that. What are you relying on? Your honor, they required that any spillover benefits outside of the zone have to be allocated regionally, which is not what Old Dominion said. They're interpreting Old Dominion incorrectly to require that any potential benefit that falls outside of a local zone has to be allocated to the beneficiary of that zone. But the MISO transmission owners case in the Seventh Circuit in 2016 tells us otherwise. Well, of course, we're not in the Seventh Circuit, and I'm not sure that your reading of Dominion is the only way Dominion can be read. That's what I'm trying to understand. I mean, FERC has taken the position that, first of all, the Seventh Circuit cases are different, factually, but secondly, it doesn't read Dominion to say that. And it said that back since 2017, hasn't it? Dominion is only a 2018 case, your honor. Yes, yes. What I'm referring to is the fact that what happened in 2017 and the direction that FERC gave, then Dominion comes and it says, this is basically what we're talking about. And so now it says, you know, it had to reject Mid-Continent's proposal because it continues to demonstrate, as it says, that some such projects would provide benefits to both regional systems, and yet under the proposal, some would not be recognized. Isn't that correct? No, your honor, that's not correct. That's not what FERC said about inter-regional projects. That's a misunderstanding about inter-regional projects and it's the post-talk rationalization by FERC. I'm looking at the red brief, page 31. Yes, and that is where FERC gets into its post-talk rationalization that inter-regional projects are somehow different from regional projects. But here, that was never raised in the orders below where FERC failed to analyze the inter-regional proposal at all and simply relied on the regional proposal to reject. No, but counsel, what I'm getting at is the way I read FERC's brief is you're arguing one thing and it's saying something else. It's saying that back in 2017, it ordered what it wanted and Mid-Continent has never done it. And so, so much time has passed, you know, even up and down, up and down, so FERC says, all right, we're going to exercise our authority under section 206. FERC was not clear on what it wanted. It did not set the just and reasonable cost allocation. It did not set any cost allocation when it lowered the voltage threshold to 100 kV in this case. Counsel, I have a couple of questions at the outset. If you were right, wouldn't PJM be, the position be unreasonable? Which PJM position is that, your honor? Where they allocate low voltage? They do the, they do it the way FERC thinks they should do it, right? They allocate low voltage projects, as Old Dominion said, to the local zone, which is what we are proposing in our proposal. Then I misunderstand. I thought PJM did it the way FERC likes it. Isn't that correct? What PJM did is they allocate. Ma'am, just answer the question. Doesn't PJM do it the way FERC wants it to be done? No, your honor. They allocate low voltage projects to the local zone. That's what our proposal is. Yeah, I thought PJM did it differently than you did. PJM allocates. No, that's not correct, your honor. PJM allocates high voltage projects across the region and it allocates low voltage projects to the local zone. But it is not, it is not protesting in this case. No, your honor, it's not. So it is acquiescing the FERC's position. In Old Dominion, yes, it acquiesced to FERC's position. Now, one other question I have. What is the economic reason for your objection? Not the legal reason, but the economic reason. What's the concern about the 20% allocation throughout the entire... The concern is that there's many, many low voltage connections between, along the MISO-PJM theme and we will be allocated costs that are not commensurate with benefits. So, so the, so different parts of your mid-continent would have different views, right? In other words, what I'm a little puzzled about is where is the economic fight about in this case? I know you don't like the allocation of the 20% throughout the entire region, but why economically? Not legally, but economically, what's the fight about? Because costs will be shifted from those that benefit on, that are located on the theme to those that don't benefit. And we don't want to receive those shifts in costs because it's unjust and unreasonable for us and it would be expensive for our customers. Well, but of course, there's a difference in economic views between those who are far removed from the project and those who are close, right? Not in this case, your honor. No, I'm talking about generally. I believe that for low voltage projects, there is a common understanding that the benefits are local and that they should be allocated locally. So even, so say there was a local project in Arkansas, which is where energy operating companies are, they would pay for that project. They prefer to pay for that project rather than shift costs to those outside of the local zone because they recognize that low voltage projects principally benefit the local region. They're fine with high voltage allocations across the region because those projects bring, actually bring regional benefits. But these are low voltage projects that principally have their, and almost exclusively have their benefits in the local zone. What about FERC's argument that when you propose projects, you take into account the benefits to the end of your borders? So FERC applied the wrong 205 standard here, and it was requiring that there be, that any potential benefit outside of the zone has to be allocated to outside of the zone. But that is, that is not what cost causation requires, and it's not what the 205 standard. You're not, you're not responding to my question. FERC points out that when you propose a project, you take into account the benefits far removed from the particular zone in which the project will be located. Only for high voltage projects, Your Honor, not for low voltage ones. FERC has a history of approving proposals for low voltage projects that are allocated locally. You're right, exactly right, for high voltage projects where there are benefits outside of the local zone for a high voltage project. Yes, those benefits are allocated appropriately to far away spots where the power can actually flow. Because under low voltage projects, power doesn't flow very far, and these are small localized projects with locally concentrated benefits. You say very far, but you wouldn't deny that there's some benefit that flows to the end of the transmission belt. For a low voltage project like the one that we put in our brief, that example, no. The lower voltage. Those, no, the benefits don't flow out to the edge of the grid. Absolutely not, not a single volt. No, Your Honor, this record shows that when PJM and MISO looked at interregional projects in North Dakota, they were suspect because neither MISO or PJM thought that those would flow to the edge of the grid as far enough to get to PJM. So, low voltage projects are treated very differently in transmission planning and in interregional planning, and this record, in fact, shows that you can't build a small, low voltage project in North Dakota and have its benefits flow out to PJM. Well, your statement includes various adverbs which acknowledge that benefits can flow beyond the place where the low voltage is located, correct? Yes. So then, why isn't Judge Silverman's question directly relevant here? Because he asked whether it could flow out to the edge of the grid. No, his original question was when you propose a project, you take into account where both the high and the low voltage projects will provide benefits. Yes, Your Honor, to the extent that you can measure those benefits and you can measure them reliably, yes. And what FERC resisted, as I understand it, is excluding those benefits that flowed out, that you can't exclude them. Well, in our interregional proposal, there was only one metric that would measure those benefits, and there was no showing that there were actual regional benefits that flowed outside of the zone of where the project was located. That was the only metric that would measure whether the project had extra zonal benefits. And there was no data. It was pure speculation about whether those would actually produce benefits outside of the zone. And those types of spillover benefits, FERC has approved a local cost allocation to the local zone for those types of spillover benefits. It says, yes, exacting precision is not required. And you can allocate to the local zone, even if there are some benefits. In the MISO transmission owner's case, it was up to 25% of the benefits were outside of the local zone. Right. But the Seventh Circuit took the position that they weren't substantial. Correct? Yes, that's correct, Your Honor. Yes. All right. They were not substantial either. FERC took that position. Well, FERC wasn't looking at the Seventh Circuit case. Why wasn't it, Your Honor? That was part of the Old Dominion case. Oh, I understand that, counsel. But it's looking at the proposal here. It issued the order in 2017. Don't exclude benefits simply because they flow outside. You've measured them. You know they exist, but you're excluding them. And so, petitioner came back with one proposal that didn't do that for it. Came back with a second where it didn't do that. And FERC disapproved it. Isn't that this record we have here? No, Your Honor. The benefits in that complaints order that FERC was pointing to are not the kind of benefits that are used. They are not benefits. They're transfer payments. And so, they are not used to calculate benefits for the purposes of cost allocation. As our brief explained, MISO and PJM did a study in 2015 and looked at the transfer payments, but it did not find that those benefits, that those were benefits. They weren't. They're transfer payments. And what are they? They are payments between PJM and MISO when there is congestion on one system that can be relieved by generators on the other system. So, I guess, counsel, I don't know why Seventh Circuit was even talking about unsubstantial benefits if it's talking only about transfer payments. And I didn't understand it to be talking only about transfer payments. I think I may have confused you, Your Honor. The MISO transmission owners case in the Seventh Circuit wasn't talking about transfer payments. Precisely. So, neither are we here. Isn't that correct? FERC is saying that, no, that's not correct, Your Honor. So, we are here talking only about transfer payments? In terms of what would distinguish interregional projects from regional projects, yes. Oh, I understand that. But we're talking, see, I appreciate, counsel, that you may be a lot more familiar with the technical terms here. But I didn't understand this to be a problem of one circuit's dealing with transfer payments, another circuit's dealing with something else. I thought this was just a question of FERC's view that if there are benefits, outside the zone, you can't ignore them. You are correct, Your Honor. There's nothing about transfer payments between the different circuits. But FERC followed Old Dominion, which said in order to allocate regionally, you have to have significant regional benefits. It found there were no significant regional benefits for these interregional projects. And it was not able to substantiate any benefits. All benefits were speculative in terms of the benefits that were measured through the SPP metric. Any further questions? All the rest of them. Sorry, excuse me. Please finish. All the rest of the benefits that MISO would have calculated for local low-voltage projects were in the local zone. There was a potential, a very small potential that one metric would measure some small benefits outside of that local zone. But FERC rejected our 205 filing requiring precision and perfection that it doesn't require for its own self in setting the replacement rate. Any further questions? No. Thank you. Council will hear from you after we hear from Council for FERC. So, Council for FERC? Yes, good morning. Carol Banta for the I'd like to clear up some confusion about the 2017 order or about this transfer payment question. I believe petitioners are trying to re-litigate something that they raised and lost on rehearing in that proceeding. The commission made findings in the 2016 order based on the quick hit analysis. The transmission owners were unhappy with the commission's treatment of the quick hit analysis and raised all of that on rehearing. And the commission addressed it in the rehearing order in 2017 at, I want to say paragraph one, I'm sorry, paragraph 48. We denied transmission owners request for rehearing, which it recaps the previous page. This is JA 189 and 190, recaps the previous page. Pages six to 10 of their reply brief are essentially a rehash of the rehearing request that was denied that no party sought judicial review of that. So, this is a collateral attack that the court doesn't need to consider at all. Now, turning to the Old Dominion question, I believe the court's questions have gotten to this. The commission does not read Old Dominion as limited as the petitioners do to the idea that we have large projects that we know have significant regional benefits and that's the end of the story. The commission in particular was looking at language in Old Dominion. It is true in that case that there didn't have to be further findings of what the regional benefits were because they were large projects that were assumed. They were actually assumed and the commission made no such assumption here. The commission looked at page 1263 of Old Dominion where the court says, we fail to see how a categorical refusal to permit regional cost sharing was the problem and goes on to say the cost causation principle prevents regionally beneficial projects from being arbitrarily excluded. So, what the commission said in the orders here about cost causation is that the Mid-Continent proposed to calculate benefits that would be beyond the zone in the process of selecting a project and then actively disregard. Excuse me, counsel. The petitioner denied that. I was puzzled. Well, they think it's not and I believe this argument was not raised on re-hearing before the commission about the propriety of the Southwest Power Pool settlement metric. But Mid-Continent proposed to assess these projects for selection using several metrics, one of which was the Southwest Power Pool settlement metric, which would look at any benefits anywhere in the region but then only count the ones in the local zone. So, I believe what petitioners are arguing, and again I don't think I saw this argument raised below, is that that particular metric would never apply to SEAMS projects with the Mid-Atlantic operator, between the Mid-Continent and the Mid-Atlantic operator. I don't think we have anything in this record to show that, but the commission, because this isn't just Indiana, the SEAM with PJM, the SEAM with the Mid-Atlantic region extends for some distance. So, we just don't... Well, this, the orders and the filings that were before the commission here were strictly for Mid-Continent allocation. I know, I know. So, PJM didn't take a position. This is an inter-regional concern. So, what was PJM's position? Well, in the 2016-2017 original proceeding, the whole problem the commission found was that PJM was already willing to consider projects down to 100 kilovolts, and it was Mid-Continent that didn't. That's right. In other words, they had different views. Yes, but they had different standards for projects they were willing to do cost sharing for, and that was the entire problem. And incidentally, that's the lower projects, not the low projects, right? They're not low. They're all... 100 kilovolts is transmission, and the commission, I don't believe, certainly not in orders here, has never adopted low voltage. There's lower and higher. There's extra high. Let me see if I nail this down. What is PJM's position with respect to the issue in this case, whether or not 20% should be allocated to the far regions of the region or not? Are they in agreement with FERC or not? They're not involved in this case at all. It's not their... I know they're not involved in this case, but what was their position before FERC? Do they agree with FERC or not? They did not intervene in Mid-Continent's filing. They have their own way of doing it, which I do not know, and which has not been at issue in this case, because this was only about Mid-Continent, so they didn't... The reason I ask is this is an inter-regional project, and it would be certainly peculiar if one of the regions did it one way, and the other region did it another way. Well, no, that was what the commission found in 2016-2017. As far as selection, you both have to... You don't necessarily have to do it the same way, but you have to both be able to consider these lower voltage projects, but this compliance piece is only about Mid-Continent's cost allocation of its share within its region. I realize that. Well, PJM doesn't care because they have their X dollars of cost for the project, which they will allocate however they do, and I don't know the answer to that because it hasn't been in dispute, but they have no reason to care how Mid-Continent allocates its share of the inter-regional. The inter-regional is already allocated between the two, and this is just how Mid-Continent splits up. But if they did it differently than did Mid-Continent, then it would be... And Mid-Continent was right, then it would be unreasonable for PJM. Well, I mean, just unreasonable. Different regions can do some things differently, and these are both large regions with a lot of stakeholders and their own processes, and the Commission has never tried to impose a uniform transmission planning or allocation regime on every region. The Commission does allow the regions to develop their own, and they have, and they come from very different historical roots. So we have no reason to believe that PJM does it the same way that Mid-Continent does, nor do they have to. Once they divvy up the cost of the project between the two of them, they each then divvy up among their regions differently, and this is only about the Mid-Continent piece of the already divided between the two. One other question, which goes to the economics. There's a difference in interest, obviously, between in Mid-Continent's region, a difference in interest between those who are in the locations where big or medium-sized projects would be located, and those far removed, right? So there'd be a difference in economic interest within the region. There may be, yes. But, and certainly some transmission owners are going to be closer to the seams with PJM, but often in these regions, the entity whose ox is gored in one instance is not the one whose ox is gored in the next instance. So, and this case was not about one specific project. This was about what the rules will be for any such projects, and that's how the Commission approached it. Yes, I'm still trying to figure out why there's a difference in economic view between those that would be located, those zones that would be primarily where new transmission facilities would be located, and those facilities which are further away. Obviously, there's a conflict of interest there, and I'm puzzled as to why it's resolved the way it is. And I don't have a way to answer that. I would note that the allocation method that the Commission chose at the Section 206 Step 2 method would not, this is not a postage stamp allocation. Your Honor mentioned 20% regionally. This actually isn't that. These projects don't get 20% across the board to everybody postage stamp. This is divvied up by zones, but the allocation method that the Commission put in place does it based on the adjusted production cost savings metric. So, that doesn't mean that someone- I wish to congratulate for making up terminology. It is absolutely incomprehensible. We didn't make that one up. I believe that metric was made up by Midcontinent in 2007. But it actually is descriptive of what it is. It actually is looking at production costs and the savings, and then I don't know exactly what the adjusted refers to, but I guess that has something to do with it. Nor did I. Yeah, but it really does refer to what it is, which I know is not always the case. I'd like to make one further note about supposed post hoc arguments. Of course, from 2016-2017, the Commission did make a distinction between inter-regional projects and regional projects, but to the extent that we're talking about the third regional order and the paragraph that the petitioner cited, and we cited as well in that, that order issued the same day as the re-hearing order in this case. So, to the extent we're talking about it on appeal at all, the petitioners never raised anything on re-hearing because they didn't seek re-hearing, and they didn't have to seek further re-hearing to make an appeal, but they are presenting a new argument. Let me ask you one more question. I noticed that there are two other cases pending in this court involving not inter-regional projects, but simply regional products, in which Mid-Continent is taking essentially the same position with respect to regional projects, right? I believe that the pending cases are actually challenges by a competitive developer in which the transmission owners would be aligned with the outcome and not opposing it. Ms. Amarkil can correct me if I'm wrong, but I know that the challenge to the third regional filing that the commission did accept was brought by Ellis. If we would decide in favor of FERC in this case, would that have any impact on the pending cases? No. I'm surprised you say that. Well, this is the only piece of the inter-regional project. It's the only piece left. Isn't the issue in those two cases the same, whether or not you can allocate costs throughout the entire region? Well, I think in at least the one I know more about, which is they don't like that the commission didn't make Mid-Continent treat regional local economic projects the way that it treats the 100 to 230 kilovolt projects for inter-regional. The commission decided that it was okay under these circumstances that we have one treatment for the 100 to 230 inter-regional, and that goes back to the 2016-17 orders. But because the commission never found Mid-Continent's regional cost allocation, as it existed, to be unjust and unreasonable and in need of replacement, Mid-Continent was just replacing it of its own volition. The commission didn't make Mid-Continent do the same thing for 100 to 230 kilovolt, and a competitive developer thinks they should. So I don't think a decision in that case would have an impact on this one, because it's not going to undo what the commission did here. I was asking the other way, whether a decision on your affirming your position in this case, hypothetically, would that have an impact on the other cases? I really don't think it would, because the third order found the- Okay. That's all I want to hear. Okay. All right. If there are no further questions- Anything further? Either judge? No. No. Thank you, counsel. Thank you. All right, counsel for petitioners. Thank you, your honor. First of all, I'd like to put aside the complaint proceeding and the 206, because independently, FERC has an obligation under section 205 of the Federal Power Act to evaluate and to find whether a proposal is just and reasonable. Here, the only language that we have on whether the inter-regional proposal to allocate local projects to local zones is one paragraph in paragraph 21JA478 on the commission's determination about whether the proposal is just and reasonable. The commission did not do any independent analysis of whether this proposal differed for inter-regional or regional. It just said, we're confirming based on the analysis that we did in the regional order. But the commission, if it's going to raise the issue that inter-regional projects are somehow different from regional projects, it has to provide more analysis than is provided in the inter-regional rehearing order at paragraph 21, which says just that we confirmed that we're, we're, we affirmed that we are not going to do any analysis of the inter-regional proposal and we are rejecting it because we rejected the regional proposal. Well, that's one way you can read it. The other way you can read it is FERC said we already addressed this issue in the regional, so we don't have to readdress it in the inter-regional. But now it's coming and saying that, that's one way to read it, your honor, but now it's saying that the inter-regional projects have some, because they have some special, special characteristics that they have regional benefits and it's pointing to the, it's pointing to the complaint proceeding where the commission found that there may be regional benefits of inter-regional projects based on the transfer payments that we were talking about before. But here, if the commission is going to say they, these are inter-regional projects, they have regional benefits, it needs to say that when it rejects the, the 205 proposal and it didn't say that. With regard to Judge Silverman's question on the PJM position, FERC directed that each RTO, each regional transmission organization do an analysis of the benefits for its region. There's no inter-regional analysis done here to see how the, the projects are split. Each PJM counts up the region, counts up the benefits in its region. MISO counts up the benefits in its region by comparing the, the project to under its projects and they add them together and then that's how they split the, split the cost between the two regions. PJM is, is fine with that, your honor. It doesn't have any issue in determining the cost for its region based on its regional analysis. But they buy, they buy FERC's framework. They buy FERC's framework that, that, no they don't because they, they allocate low voltage projects to the local region, to the local zone. Only? To local zone only? That's, that's what Old Dominion says, yes. There are no, there are no, for low voltage projects which are below 345 KB, there are no inter, there are no regional benefits, your honor. There are zero. In other words, they take the exact same position as you do? Yes. And in fact. But they're not challenging FERC. Because FERC has allowed them to do that, your honor. And FERC has said to our 205 proposal here. Why aren't you raising hell about that saying PJM is allowed to do what you're not allowed to do? It's not in the record, your honor. I, that's not, we are, we are raising hell about a different kind of proposal that FERC allows to be allocated to the local zone. And that's why we're relying on FERC's, that's why we're relying on FERC's order in that instance where it said spillover benefits up to 25% outside of the zone are fine. You can still meet the cost causation principle by using that allocation. Did not PGM recognize projects lower voltage down to 100? It does, and it allocates them to the local zone. Yes. Yes. All right. So it's very difficult to parse an argument on a record that's not before us. But we do have these representations by FERC and your reply brief did not contest that. So I think, you know, this is complicated enough without limiting this to what FERC said about mid-continental's proposal. All right, looking only at the mid-continental world, PGM is out of it, not before us. Anything further? Thank you. Thank you. Thank you. We will take the case under advisement.
judges: Rogers, Wilkins, Silberman